UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

LISA HUNTER,

      Plaintiff,

v.                                 Case No:   2:15-cv-260-FtM-CM

COMMISSIONER OF SOCIAL
SECURITY,

      Defendant.

_____

## OPINION AND ORDER

Plaintiff Lisa Hunter seeks judicial review of the denial of her claim for Social Security disability insurance benefits ("DIB") by the Commissioner of the Social Security Administration ("Commissioner").   The Court has reviewed the record, the briefs and the applicable law.   For the reasons discussed herein, the decision of the Commissioner is **AFFIRMED**.

### I.   Issues on Appeal[1]

Plaintiff raises two issues on appeal: (1) whether substantial evidence supports the Administrative Law Judge's ("ALJ") determination that Plaintiff's mental impairments of depression and anxiety are non-severe; (2) whether substantial evidence supports the ALJ's determination of Plaintiff's residual functional capacity

---

[1] Any issue not raised by Plaintiff on appeal is deemed to be waived. *Access Now, Inc. v. Southwest Airlines Co.*, 385 F.3d 1324, 1330 (11th Cir. 2004) ("[A] legal claim or argument that has not been briefed before the court is deemed abandoned and its merits will not be addressed."), *cited in Sanchez v. Comm'r of Soc. Sec.*, 507 F. App'x 855, 856 n.1 (11th Cir. 2013).

("RFC").   Because the decision of the Commissioner is supported by substantial evidence, and the Plaintiff has not shown any reversible error, the decision will be affirmed.

## II.   Procedural History and Summary of the ALJ's Decision

On June 15, 2011, Plaintiff filed her application for DIB.   Tr. 198-203, 246. Plaintiff's application alleged disability beginning on February 23, 2009; however, she later amended the disability onset date to February 23, 2010.   Tr. 671, 200. Plaintiff alleged disability due to depression, anxiety, post-traumatic stress disorder, asthma, high blood pressure, thyroid problems, and suicidal and homicidal thoughts without medication.   Tr. 250.   The claim initially was denied on August 15, 2011 and upon reconsideration on November 17, 2011.   Tr. 151-55, 160-64.   Plaintiff requested and received a hearing before ALJ Larry J. Butler on August 22, 2013, during which she was represented by an attorney.   Tr. 166-67, 658-74.   The ALJ issued an unfavorable decision on August 10, 2012.   Tr. 129-42.

The Appeals Council granted Plaintiff's request for review, vacated the ALJ's August 22, 2013 decision, and remanded the case.   Tr. 147-49.   Plaintiff appeared for a second hearing before ALJ Larry J. Butler on April 22, 2013, during which she was represented by an attorney.   Tr. 33.   The ALJ issued a new unfavorable decision on September 17, 2014.   Tr. 14-27.   Plaintiff once again requested review of the ALJ's decision, which the Appeals Council denied on February 25, 2015.   Tr. 1-5.   Accordingly, the ALJ's September 17, 2014 decision is the final decision of the Commissioner.   Plaintiff filed an appeal in this Court on April 24, 2015.   Doc. 1.

Both parties have consented to the jurisdiction of the United States Magistrate Judge, and this matter is now ripe for review.   Docs. 21-22.

In his September 17, 2014 decision,[2] the ALJ found that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2015. Tr. 17.   At step one, the ALJ concluded that Plaintiff has not engaged in substantial gainful activity since February 23, 2010, the alleged onset date.   *Id.*   At step two, the ALJ found that Plaintiff "has the following severe impairments: hypertension, hypothyroidism, and asthma."   *Id.*   At step three, the ALJ concluded that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 . . . ."   Tr. 22.   The ALJ determined that Plaintiff had the RFC to

> perform the full range of light work . . . . The claimant is able to occasionally lift/carry 20 pounds, frequently lift/carry 10 pounds, stand/walk about 6 hours in an 8-hour workday, sit about 6 hours in an 8-hour workday, and has unlimited ability to push and pull including operation of hand and/or foot controls. The claimant should avoid concentrated exposure to fumes, dusts, gases, and poor ventilation.

Tr. 22.   Next, the ALJ found that Plaintiff is unable to perform any of her past relevant work as a lieutenant police officer.   Tr. 26.   At step five, in considering Plaintiff's RFC, age, education, and work experience, and based on the RFC for the full range of light work, the ALJ determined that a "finding of 'not disabled' is directed by Medical-Vocational Rule 202.21 and Rule 202.14."   Tr. 26.   The ALJ determined

---

[2] Unless otherwise noted, the Court is referring to the September 17, 2014 decision when discussing the ALJ's decision.

that a vocational expert was not required, and that Plaintiff can perform the full range of light work with only a restrictions on atmospheric conditions. *Id.*

### III.   Social Security Act Eligibility and Standard of Review

A claimant is entitled to disability benefits when she is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to either result in death or last for a continuous period of not less than twelve months. 20 C.F.R. § 404.1505(a). The Commissioner has established a five-step sequential analysis for evaluating a claim of disability. *See* 20 C.F.R. § 404.1520. The Eleventh Circuit has summarized the five steps as follows:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a residual functional capacity ("RFC") assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's RFC, age, education, and work experience.

*Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011). The claimant bears the burden of persuasion through step four, and, at step five, the burden shifts to the Commissioner. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards and whether the findings are supported by substantial evidence. *Crawford v. Comm'r of Soc. Sec.,* 363 F.3d 1155, 1158 (11th Cir. 2004). The Commissioner's findings of fact are conclusive if supported by

substantial evidence.   42 U.S.C. § 405(g).   Substantial evidence is "more than a

scintilla, *i.e.*, evidence that must do more than create a suspicion of the existence of

the fact to be established, and such relevant evidence as a reasonable person would

accept as adequate to support the conclusion."   *Foote v. Chater*, 67 F.3d 1553, 1560

(11th Cir. 1995) (internal citations omitted); *see also Dyer v. Barnhart*, 395 F.3d 1206,

1210 (11th Cir. 2005) (finding that "[s]ubstantial evidence is something more than a

mere scintilla, but less than a preponderance") (internal citation omitted).   "The

district court must view the record as a whole, taking into account evidence favorable

as well as unfavorable to the decision."   *Foote*, 67 F.3d at 1560; *see also Lowery v.

Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (stating that the court must scrutinize

the entire record to determine the reasonableness of the factual findings).

### IV.   Discussion

> A.   *Whether substantial evidence supports the ALJ's determination that Plaintiff's mental impairments of depression and anxiety are non-severe*

Plaintiff argues that the record does not support the ALJ's finding that

Plaintiff's has no significant mental impairments.   Doc. 25 at 1.   Although Plaintiff

has centered her brief on one argument – that the ALJ's RFC assessment fails to

account for Plaintiff's symptoms – in her conclusion she states that "the record simply

does not support a finding that [Plaintiff's] depression and anxiety are non-severe."

*See* Doc. 25 at 15-22.   However, no arguments were raised to support this conclusory

statement for the step two analysis.   *See id.*   Although this issue is deemed waived,[3]

---

[3]   *See* note 1, supra.

because any purported error at the step two analysis is harmless in this case, the Court will consider it.

At the second step in the sequential evaluation process, the ALJ determines whether the claimant has a severe impairment.   20 C.F.R. § 404.1520(a)(4)(ii).   If the ALJ determines a claimant has a severe impairment, as here, the analysis moves to step three.   *See* 20 C.F.R. § 404.1520(a)(4).   A severe impairment is an impairment or combination of impairments that significantly limits a claimant's physical or mental ability to do basic work activities.   20 C.F.R. § 404.1520(c).   "An impairment is not severe only if the abnormality is so slight and its effect so minimal that it would clearly not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience."   *McDaniel v. Bowen*, 800 F.2d 1026, 1031 (11th Cir. 1986).

This circuit holds that the ALJ's finding "of any severe impairment, whether or not it qualifies as a disability and whether or not it results from a single severe impairment or a combination of impairments that together qualify as severe, is enough to satisfy the requirement of step two."   *Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987).   This is because after proceeding beyond step two of the process, the ALJ must consider all of the claimant's impairments taken as a whole when determining whether her impairments qualify as a disability (step three) and whether she can return to her past work (step four) or, if not, whether she can perform other work available in the national economy (step five).   *Id., see* 20 C.F.R. § 404.1.

Here, the ALJ found that plaintiff has severe impairments of hypertension, hypothyroidism, and asthma.  Tr. 17.  The ALJ specifically discussed Plaintiff's complaints of anxiety and depression, singly and in combination, and determined that they do not cause more than minimal limitation in Plaintiff's ability to perform basic mental work activities and, are therefore, non-severe.  Tr. 18.  The ALJ specifically considered the relevant mental health records on file and applied the evidence to the four broad functional areas, typically known as "paragraph B" criteria.  Tr. 18-22. The undersigned has reviewed the record as a whole, as will be discussed in detail below, and determined that the ALJ's decision at step two is supported by substantial evidence.   Moreover, even if the ALJ committed an error at step two, it is a harmless error, because the ALJ complied with the sequential evaluation process and proceeded to step three.  *Jamison*, 814 F.2d at 588.

B.      *Whether substantial evidence supports the ALJ's determination of Plaintiff's RFC*

On November 8, 2011, Plaintiff's treating psychiatrist, Dr. Steven Machlin, M.D., completed a "Treating Source Medical Status Report" in which he opined that Plaintiff would not be able to sustain work activity for eight hours per day, five days per week.  Tr. 495-97.  Dr. Machlin explained that Plaintiff cannot concentrate or handle stress for any sustained amount of time.  Tr. 497.  He also opined that Plaintiff has very poor memory, and she cannot remember things such as her address or phone number.  Tr. 496.  Plaintiff argues that the ALJ erred when he gave Dr. Machlin's opinion "little weight" and by excluding his opined limitations of poor concentration  and  poor  memory  in  the  RFC,  thereby  rendering  the  RFC

determination unsupported by substantial evidence.   Doc. 25 at 15-21.   The Commissioner responds that the ALJ properly reduced the weight of Dr. Machlin's opinion because the record did not support it.   Doc. 26 at 4.

The RFC is the most that a claimant can do despite her limitations.   *See* 20 C.F.R. § 404.1545(a).   At the hearing level, the ALJ has the responsibility of assessing a claimant's RFC.   *See* 20 C.F.R. § 404.1546(c).   The ALJ is required to assess a claimant's RFC based on all of the relevant evidence in the record, including any medical history, daily activities, lay evidence and medical source statements. 20 C.F.R. § 404.1545(a).   The claimant's age, education, work experience, and whether she can return to her past relevant work are considered in determining her RFC, *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997) (citing 20 C.F.R. § 404.1520(f)), and the RFC assessment is based upon all relevant evidence of a claimant's ability to do work despite her impairments.   *Phillips v. Barnhart*, 357 F.3d 1232, 1238 (11th Cir. 2004); *Lewis*, 125 F.3d at 1440 (citing 20 C.F.R. § 404.1545(a)).

Here, the ALJ considered Plaintiff's testimony, her daily activities, her medical history, and medical source opinions with respect to her alleged mental impairments. Tr. 19-25.   Under the regulations, opinions of treating sources usually are given more weight because treating physicians are the most likely to be able to offer detailed opinions of the claimant's impairments as they progressed over time and "may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations . . . ." 20 C.F.R. § 404.1527(c)(2).   Medical source opinions may be discounted, however,

when the opinion is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or if the opinion is inconsistent with the record as a whole.   SSR 96-2p; *Crawford*, 363 F.3d at 1159-60.   Accordingly, "[a]n ALJ must give a treating physician's opinion substantial weight, unless good cause is shown." *Castle v. Colvin*, 557 F. App'x 849, 854 (11th Cir. 2014) (citing *Phillips*, 357 F.3d at 1240); *Lewis*, 125 F.3d at 1440; *Sabo v. Chater*, 955 F. Supp. 1456, 1462 (M.D. Fla. 1996).   "Good cause exists when the '(1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records.'"   *Winschel,* 631 F.3d at 1179 (quoting *Phillips*, 357 F.3d at 1241).

In discussing Dr. Machlin's opinion, the ALJ gave it "little weight" and did not accept it because he found "the medical evidence as a whole does not support it."   Tr. 25.   The ALJ further articulated his reasoning as follows:

> At this time, the claimant reported and noted as doing well on her medications when taken as prescribed. She denied as psychotic symptoms and denied any suicidal ideation. She reported feeling ok. The opinion appears to be primarily based on only the claimant's negative subjective self-reporting rather than the entirety of the record.

*Id.*   The Court finds that the ALJ adequately articulated specific justifications for discounting Dr. Machlin's opinion, and his decision is supported by substantial evidence, as reflected below.

In determining Plaintiff's RFC, the ALJ considered the entire record, including Plaintiff's statements and testimony at the hearings, which he ultimately found less than credible.   Tr. 17-25.   On her Function Report, Plaintiff stated that she is able

to shave, use the toilet, and feed herself; however, depression affects her ability to dress, bathe, or care for her hair.   Tr. 258. Plaintiff stated that she does minor chores throughout the day, such as cleaning, laundry, ironing, and vacuuming.   Tr. 259. She admitted to speaking to her family on the phone two to three times per week and spending time with her husband when he was at home.   Tr. 261.   She stated she is able to drive a car, go to the grocery store, and attend doctor's appointments.   Tr. 260.   She further stated she shops once per week for approximately 2 hours.   *Id.* Plaintiff admitted to being able to follow written instructions "fairly well."   Tr. 262. However, she stated she is not able to follow spoken instructions well because she is "unable to retain memory."   Tr. 262. She also admitted to getting along with authority figures "well, as long as [she] take[s her] medication currently prescribed." Tr. 263.

Plaintiff reported that she is unable to concentrate or remember information. Tr. 279.   She stated that she cannot remember minor things, such as the date, her address, or whether she took her medications.   Tr. 259.   On April 26, 2012, at her first hearing, Plaintiff testified that in February 2009, she was placed on administrative duty at her job as a lieutenant for the highway patrol because she had an "emotional breakdown."   Tr. 664-65.   She testified that she experiences a lot of stress and anxiety.   Tr. 665.   Her anxiety attacks occur daily and last for about five to ten minutes each, during which her heart beats very fast, she feels like bursting in tears, lightheaded, and very sweaty.   Tr. 667-68.   She testified that she did not want to leave her house, be around anyone, or even be alive sometimes.   Tr. 668.

Plaintiff further testified that she was seeing a psychiatrist, and this treatment was "definitely" helpful. Tr. 666. She testified, however, that medication did not help control her depression, but instead makes her "feel weird in [her] head." Tr. 666, 68. Plaintiff attributed poor memory, such as inability to remember her address or things she heard five minutes prior, to her alleged mental impairments. Tr. 667. She testified she feels extremely tired all the time, has no energy, and has difficulty concentrating. Tr. 669. She also testified that she was attending school to obtain her Bachelor's degree in criminal justice, but stopped in 2010, only three classes shy of her degree, because she could not pass her classes. Tr. 662.

On April 22, 2013, during her second hearing, Plaintiff testified that she has difficulty sleeping unless she takes sleeping pills every night. Tr. 41. When she takes sleeping pills, she usually sleeps for twelve hours. *Id.* She testified that she has trouble being around people as she experiences panic attacks, and thus isolates herself in her house. Tr. 41-42. She testified to having poor memory; unless she writes notes to herself or is reminded by her husband, she is unable to remember to do anything or take her medications. Tr. 41-42, 49. She also forgets her address, phone number, and the day of the week. Tr. 43. Plaintiff stated she attempted to go to school for four semesters in a row but failed all of her classes due to inability to concentrate. Tr. 44. She testified she has frequent suicidal ideations as she does not want to be a burden on her children or her husband. Tr. 45. Plaintiff further testified she could not afford to see her psychiatrist anymore because he stopped taking her insurance, and instead has been seeing her regular practitioner for her depression and anxiety. Tr. 46. The ALJ found Plaintiff to be "not fully

credible," and Plaintiff does not challenge this conclusion.   Tr. 25; *see also* Doc. 25.

Although Plaintiff testified that she failed her classes and stopped attending school in 2010 due to poor concentration and memory, limitations that Dr. Machlin also noted in his opinion, Plaintiff's medical history reveals that throughout the year 2010, treatment notes from Dr. Machlin's office consistently marked Plaintiff's concentration as "intact" and her cognition as "alert."   Tr. 514-18.   On February 2, 2010, Plaintiff visited Dr. Machlin's office, during in which she appeared well, her mood was stable, she was hopeful, and alert.   Tr. 519.   She reported "doing good" and "feeling much more confident."   *Id.*   Plaintiff reported that she was going to school to be able to work.   *Id.*

Several months later, on August 24, 2010, Plaintiff again visited Dr. Machlin's office.   Tr. 518.   During this visit, although her mood was depressed, she appeared well groomed, her concentration was intact and cognition was alert.   *Id.*   She had recently gotten back with her separated husband and purchased a home.   *Id.*   She reported having some suicidal ideation with a plan to let her car run, but denied she would actually do it.   *Id.*   Her Effexor XR[4] medication was increased and she was prescribed Xanax.[5]   *Id.*

During the following visit on September 15, 2010, the nurse practitioner from

---

[4] "Effexor (venlafaxine) is an antidepressant in a group of drugs called selective serotonin and norepinephrine reuptake inhibitors (SSNRIs). Venlafaxine affects chemicals in the brain that may be unbalanced in people with depression. Effexor is used to treat major depressive disorder, anxiety, and panic disorder." https://www.drugs.com/effexor.html.

[5] "Xanax (alprazolam) is a benzodiazepine (ben-zoe-dye-AZE-eh-peen). Alprazolam affects chemicals in the brain that may be unbalanced in people with anxiety. Xanax is used to treat anxiety disorders, panic disorders, and anxiety caused by depression." https://www.drugs.com/xanax.html.

Dr. Machlin's office noted that Plaintiff was "feeling better," but she did not want to leave the house.   Tr. 517.   Plaintiff appeared well groomed during this visit and her suicidal ideation was gone.   *Id.*   Plaintiff reported she stopped going to school because she had "too much going on."   *Id.*   Her Effexor medication was increased yet again, and her Zoloft[6] medication dosage was decreased.   *Id.*

On October 13, 2010, Plaintiff reported that she took her Xanax medication and was "not feeling depressed."   Tr. 516.   She had seen her family for three weeks and stated that she "had a good time."   *Id.*   The following week, on October 17, 2010, the nurse practitioner noted that Plaintiff had some anxiety about her mail, but "things were going well."   Tr. 515.   During this visit, Plaintiff also reported she was sleeping well with Ambien.[7]

On December 1, 2010, the nurse practitioner noted that Plaintiff's mood was stable, and she appeared well-groomed and alert.   Tr. 514.   Although Plaintiff reported having sleeping problems and waking up at 2:30 or 3:30 in the morning "for [a] couple of weeks" before this visit, her energy level and concentration were intact.   *Id.*   On January 5, 2011, the nurse practitioner noted that Plaintiff's children went to visit her for Christmas and she "had a good time."   Tr. 513.   Plaintiff also had

---

[6] During Plaintiff's August 24, 2010 visit, she was taking 100 mg of Zoloft, and it was reduced to 50 mg.   Tr. 517-18.   "Zoloft (sertraline) is an antidepressant in a group of drugs called selective serotonin reuptake inhibitors (SSRIs). Sertraline affects chemicals in the brain that may be unbalanced in people with depression, panic, anxiety, or obsessive-compulsive symptoms. Zoloft is used to treat depression, obsessive-compulsive disorder, panic disorder, anxiety disorders, post-traumatic stress disorder (PTSD), and premenstrual dysphoric disorder (PMDD)."   https://www.drugs.com/zoloft.html.

[7] "Ambien (zolpidem) is a sedative, also called a hypnotic. Zolpidem affects chemicals in the brain that may be unbalanced in people with sleep problems insomnia. Ambien is used to treat insomnia."   https://www.drugs.com/ambien.html.

gone to Hawaii to watch her grandchildren. *Id.* During this visit, Plaintiff reported to having low motivation, some anxiety, being overwhelmed easily, and getting tearful at times. *Id.* Her Effexor medication again was modified. *Id.*

On January 20, 2011, Plaintiff reported to the nurse practitioner that she had been "feeling awful" because her cousin "who was more like a mother" died. Tr. 512. She reported she did not want to get up in the morning. Tr. 512. The nurse practitioner prescribed Plaintiff Abilify.[8] The following month, during a phone appointment on February 2, 2011 -- because Plaintiff was at her cousin's funeral in Michigan -- the nurse practitioner discovered that Plaintiff was not taking the correct amount of Effexor. Tr. 511. Plaintiff was taking only 75 mg of Effexor XR instead of the prescribed 225 mg. *Id.*

By March 23, 2011, Plaintiff denied feeling depressed, and her mood was "very stable." Tr. 510. She reported having more energy, and her concentration was improving; however, her cognition was forgetful. *Id.* Her mother and father were visiting her and she was enjoying their company. *Id.* She also was looking forward to going to Hawaii for a month. *Id.* On April 20, 2011, Plaintiff reported feeling a little depressed and more emotional the week prior, although she was "not getting worse." Tr. 509. She was looking forward to going to Hawaii to see her grandchildren. Tr. 509.

---

[8] "Abilify (aripiprazole) is an antipsychotic medication. It works by changing the actions of chemicals in the brain. Abilify is used to treat the symptoms of psychotic conditions such as schizophrenia and bipolar I disorder (manic depression). . . . Abilify is also used together with other medicines to treat major depressive disorder in adults." https://www.drugs.com/abilify.html.

The following month, on May 24, 2011, Plaintiff appeared at Dr. Machlin's office well groomed; however, the nurse practitioner noted that Plaintiff's mood was depressed, her concentration was impaired, and her cognition was forgetful.   Tr. 508. Plaintiff reported that she had poor energy level and passive suicidal ideation.   *Id.* As a result, the nurse practitioner adjusted Plaintiff's Abilify dosage.   *Id.* Subsequently, on June 13, 2011, Plaintiff's mood was "OK," her memory was getting better, and Abilify was helping with her low energy.   Tr. 507.   Plaintiff reported that her dog had recently died, and she just wanted to stay home.   *Id.*   Later that month, her mood continued to be "OK."   Tr. 506.   On June 27, 2011, Plaintiff reported that she broke her humerus the previous weekend due to a fall as she tried to run away from a snake.   *Id.*   She was having trouble sleeping because of the pain in her arm.   *Id.*

On July 18, 2011, Plaintiff met with Dr. Machlin.   Tr. 505.   Dr. Machlin noted that Plaintiff's mood was depressed, her self-attitude was demoralized, and her concentration was impaired; however, Plaintiff's cognition was alert and she was oriented in all spheres.   *Id.*   Plaintiff stated she was "OK," but that she gets upset easily and is prone to panic attacks.   *Id.*   She denied, however, suicidal ideation. *Id.*   She informed Dr. Machlin that she had to have surgery on her left arm due to her fall.   *Id.*

During her following appointments in August and September, 2011, Plaintiff reported to the nurse practitioner in Dr. Machlin's office that she felt "blah" and depressed.   Tr. 502-03.   However, treatment notes from Plaintiff's primary care

doctor, Dr. Timothy Snodgrass DO, on September 19, 2011, indicate that Plaintiff's

depression was better with medications.   Tr. 546.   On October 17, 2011, during her

visit to Dr. Machlin's office, Plaintiff reported to feeling anxious, nervous, tired, and

unmotivated.   Tr. 502.   She was not sure if those symptoms were from the

previously prescribed Lamictal.[9]   She, however, was sleeping well and was taking

more Xanax.   Tr. 502.   The nurse practitioner adjusted her dosage of Lamictal, and

on the next visit on October 31, 2011, Plaintiff reported feeling better.   Tr. 501-02.

During this visit, Plaintiff's memory had slightly improved, but she still felt

depressed and had passive suicidal ideation.   *Id*.

By November 28, 2011 Plaintiff admitted to taking a lot more Xanax, reported

having passive suicidal ideation, and being over-reactive and overwhelmed easily.

Tr. 500.   On January 13, 2012, Plaintiff saw Dr. Machlin again.   Tr. 499.   He noted

that Plaintiff stated she was "alright."   *Id*.   She informed him that she stayed home

a lot, was nervous in social situations, and experienced frequent panic attacks.   *Id*.

She admitted that Xanax helps her, but she still wished that she could "sleep and not

wake up."   *Id*.   Dr. Machlin prescribed Plaintiff a trial of Seroquel[10] and noted

---

[9] "Lamictal (lamotrigine) is an anti-epileptic medication, also called an anticonvulsant. Lamictal is used either alone or in combination with other medications to treat epileptic seizures in adults and children. Lamotrigine is also used to delay mood episodes in adults with bipolar disorder (manic depression)." https://www.drugs.com/lamictal.html.

[10] "Seroquel (quetiapine) is an antipsychotic medicine. It works by changing the actions of chemicals in the brain. Seroquel is used to treat schizophrenia in adults and children who are at least 13 years old. Seroquel is used to treat bipolar disorder (manic depression) in adults and children who are at least 10 years old. Seroquel is also used together with antidepressant medications to treat major depressive disorder in adults." https://www.drugs.com/seroquel.html.

other medication adjustments, such as to "consider [increasing] Effexor . . ."   Tr. 499.

On March 14, 2012, Plaintiff reappeared at Dr. Machlin's office and met with the

nurse practitioner.   Tr. 498.   She reported still having panic attacks and "[not]

feel[ing] good at all."   Tr. 498.   Plaintiff, however, admitted to the nurse

practitioner that she never raised her Effexor dosage because she forgot.   *Id.*

Because Plaintiff testified that she stopped going to Dr. Machlin's office due to

costs, there are no other treatment notes from Dr. Machlin's office.   Nevertheless, on

March 19, 2012, Dr. Snodgrass noted that Plaintiff's depression was better with

medications.   Tr. 550.   Although Plaintiff argues that the ALJ erred in accounting

for Plaintiff's discontinued treatment with Dr. Machlin due to costs, such an

argument is misplaced where, as here, the ALJ's non-disability finding was not

significantly based on a finding of noncompliance.   *Ellison v. Barnhart*, 355 F.3d

1272, 1275 (11th Cir. 2003).   For instance, in other portions of the opinion, the ALJ

thoroughly discussed Plaintiff's mental health history and noted that her alleged

mental impairments were "situational in nature."   Tr. 18.   Moreover, the ALJ gave

great weight to the opinion of the state agency psychological consultant, Catharina

Eeeltink, Ph.D., because he found "it is well supported by the medical evidence

including mental status examination and objective diagnostic testing results."   Tr.

25.   Dr. Eeeltink opined that Plaintiff's treatment notes do not reflect severe levels

of depression.   Tr. 104.

The record reveals that substantial evidence supports the ALJ's RFC

determination.   As discussed, Plaintiff felt worse when her cousin died, when her

dog died, and when she had to undergo surgery due to a broken humerus. *See* Tr. 505-06, 512. As the record reflects, the medications did help Plaintiff's depression, anxiety, and energy levels; however, during the time when Plaintiff appeared most depressed is when she admitted to failing to take the correct amount of prescribed medication. *See e.g.*, Tr. 498. Upon a review of the record, the Court concludes that the ALJ did not err in reducing the weight he gave to Dr. Machlin's opinion, as the record reflects good cause for doing so, and the ALJ articulated his reasons for doing so. *See e.g.*, *Crawford*, 363 F.3d 1155; *Phillips*, 357 F.3d at 1241. Moreover, to the extent Plaintiff points to treatment notes that may contradict some portions of the evidence relied upon by the ALJ, "when there is credible evidence on both sides of an issue it is the Secretary, acting through the ALJ, and not the court, who is charged with the duty to weigh the evidence and to determine the case accordingly." *Powers v. Heckler*, 738 F.2d 1151, 1152 (11th Cir. 1984) (*Richardson v. Perales*, 402 U.S. 389, 389-409 (1971)).

## V.     Conclusion

Upon review of the record, the undersigned concludes that the ALJ applied the proper legal standards, and his determination that Plaintiff is not disabled is supported by substantial evidence.

ACCORDINGLY, it is hereby

**ORDERED:**

1.     The decision of the Commissioner is **AFFIRMED**.

2.      The Clerk of Court is directed to enter judgment pursuant to sentence four of 42 U.S.C. § 405(g) in favor of the Commissioner, and close the file.

**DONE** and **ORDERED** in Fort Myers, Florida on this 30th day of August, 2016.

CAROL MIRANDO
United States Magistrate Judge

Copies:
Counsel of record